## IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DORIS A. MYERS, | ) | Civil Action No. 3:11-1525-RBH-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on January 8, 2009, alleging disability as of August 30, 2008. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 10, 2010, at which Plaintiff and a vocational expert ("VE") appeared and testified. On September 15, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because she could perform her past relevant work as a drafter and as an office assistant.

Plaintiff was 59 years old at the time of the ALJ's decision. She has a high school education, and an Associate's Degree in engineering graphics. She alleges disability due to the residuals of breast cancer, problems using her left arm, depression, and pain. See Tr. 141.

The ALJ found (Tr. 20-26):

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since August 30, 2008, the alleged onset date (20 CFR 404.1571, *et seq.*).

3.    The claimant has the following severe impairments: residual effects of breast surgery (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit for 4 hours in an 8-hour day, for 1 to 2 hours at a time. She can lift a maximum of 20 pounds and can lift 10 pounds frequently and less than 10 pounds occasionally. The claimant can occasionally push and pull within these pounds limitations with the left upper extremity. She must avoid crawling and climbing ropes, ladders, and scaffolds. She must avoid concentrated exposure to dusts, fumes, gases, and poor ventilation, and she must avoid overhead reaching with her left upper extremity. She is right hand dominant and can read, write, add, and subtract.

6.    The claimant is capable of performing past relevant work as a drafter and office assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2008, through the date of this decision (20 CFR 404.1520(f)).

On May 9, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on June 22, 2011.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff was diagnosed with breast cancer and underwent a left complete mastectomy on September 20, 2007. Tr. 196. On October 17, 2007, she began treatment with Dr. Screenivas Rao, an oncologist. Hormone therapy (Arimidex) was prescribed and Plaintiff was strongly counseled to quit smoking, Tr. 221-222.

On June 2, 2008, Plaintiff was treated at the emergency room for chest pain. Tr. 200-201. Dr. Michael Harless, a family practitioner, provided follow-up care on June 13, 2008. Dr. Harless noted that a cardiologist ruled that Plaintiff's chest pain was musculoskeletal. He noted that Plaintiff's left breast implant was very tender. Dr. Harless diagnosed Plaintiff with chest wall pain and refilled her prescription for the pain medication Lorcet. Tr. 239.

On February 20, 2008, Dr. Rao noted that Plaintiff's reconstruction after her mastectomy was complete, Plaintiff was tolerating Arimidex well except for hot flashes, and Plaintiff appeared to be in complete clinical remission. Tr. 223. On August 27, 2008, Dr. Rao noted that Plaintiff was

tolerating her medications very well with no hot flashes. Plaintiff had no arthralgias. She reported that she was going through a lot of stress and continued to smoke. Dr. Rao indicated that Plaintiff seemed to be in clinical remission, instructed her to return for routine follow-up care, and counseled her to stop smoking. Tr. 224.

On February 13, 2009, Plaintiff reported to Dr. Harless that she was having some pain in her left chest radiating down her left arm, which she thought was nerve pain. Dr. Harless assessed Plaintiff as having neuralgias and prescribed medication. Tr. 238. On March 13, 2009, Dr. Harless completed a questionnaire concerning Plaintiff's mental condition. He noted that Plaintiff had been diagnosed with anxiety; Xanax was prescribed and had helped her condition; no psychiatric care was recommended; she was oriented as to time, person, place, and situation; her thought process was intact; her thought content was appropriate; she was anxious; her attention/concentration was good; and her memory was good. He stated that Plaintiff had only slight work-related limitation in function due to her mental condition and she was capable of managing her own funds. Tr. 237.

Dr. John N. Jordan performed a consultative examination of Plaintiff on May 6, 2009. Plaintiff reported that since her mastectomy in August 2007, she had continuous discomfort in her left breast, axillary area, and left arm, as well as a numb feeling around the axillary area and proximal upper arm. She said the pain was worse with any movement of her left upper body and she had difficulty doing any activities. Tr. 262. Dr. Jordan's examination revealed that Plaintiff had decreased biceps strength on the left, but she could supinate and pronate both hands normally, finger objects normally, and exchange from hand to hand without problems. Plaintiff was assessed by Dr. Jordan as having chronic breast and axillary pain, and chronic obstructive pulmonary disease

("COPD"). Dr. Jordan noted that Plaintiff's pain was "unexplained" and opined it could be a reflex sympathetic dystrophic ("RSD") type pain. Tr. 262-264.

On April 6, 2009, Dr. Michael Neboschick, a State agency psychologist, opined that Plaintiff did not have a severe mental impairment. Tr. 248-261. On May 15, 2009, Dr. Jim Liao, a State agency physician, reviewed Plaintiff's records and assessed her physical residual functional capacity ("RFC"). Dr. Liao opined that Plaintiff retained the ability to lift and carry twenty pounds occasionally and ten pounds frequently; sit about six hours in an eight-hour workday; stand and/or walk about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; never crawl; frequently climb ramps and stairs; frequently balance, stoop, kneel, and crouch; never reach overhead with her left upper extremity; frequently reach in all other directions with the left upper extremity; frequently perform gross manipulation with the left upper extremity; and should avoid concentrated environmental irritants. Tr. 267-273.

On June 5, 2009, Dr. Harless noted that Plaintiff was doing "fair," but had some issues with fatigue. He recommended laboratory testing and assessed Plaintiff with "mild fatigue." Tr. 289.

Plaintiff consulted with Dr. David L. Milling, an oncologist, on August 12, 2009 to establish herself as a new patient. Plaintiff reported she had "some" pain and numbness in her left arm following her left axillary dissection. Plaintiff denied weakness and chest pain. Dr. Milling did not find any abnormalities on examination. He recommended regular repeat mammograms and using non-steroidal aromatase inhibitors. Tr. 279-280.

Plaintiff complained to Dr. Harless of having a lot of problems with neuralgias on December 15, 2009. He refilled her medications. Tr. 333.

Dr. Olin Hamrick, Jr., a State agency psychologist, opined that Plaintiff did not have a severe mental impairment on January 19, 2010. Tr. 294-307. On January 20, 2010, State agency physician Dr. Katrina B. Doig reviewed Plaintiff's records and completed a physical RFC assessment. She opined that Plaintiff could occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for about six hours in an eight-hour day; sit for about six hours in an eight-hour day; never climb ladders, ropes, or scaffolds; never crawl; and avoid concentrated exposure to environmental irritants. Tr. 308-313.

On April 27, 2010, Dr. Harless completed a questionnaire concerning Plaintiff's physical abilities. He opined that Plaintiff could walk one to two hours at a time and two to four hours total in an eight-hour workday; stand one to two hours at a time and two to four hours in an eight-hour workday; sit two to four hours at a time and four to six hours in an eight-hour workday; and lift and carry up to twenty pounds occasionally. Dr. Harless also opined that Plaintiff would need several thirty minute breaks during the day, and she was not able to work an eight-hour day, five days a week due to chest wall pain and anxiety. Tr. 316-318.

## REPORTS OF CONTACT/HEARING TESTIMONY

In a February 2009 report of contact, Plaintiff stated that she drove, cooked, did all of the household chores except vacuuming and anything that required the use of her left side, socialized with friends, was very close to her family, went to church, did drawing and painting, took care of her cat, read, watched television, and cooked. Tr. 150. In a report of contact in December 2009, Plaintiff reported that she passed her time reading, doing crossword puzzles, and painting. She said she could do laundry, walk to the drug store, and occasionally drive. Plaintiff also stated that she went grocery shopping with her husband. Tr. 174.

At the August 2010 hearing before the ALJ, Plaintiff testified that after her mastectomy, she developed severe pain in her left side and had difficulty using her left hand. She said she experienced pain and tingling in her left arm and hand. Tr. 41. She stated that her doctors told her not to do any heavy lifting, not to vacuum, and to try not to bump her left side. Tr. 43. Although Plaintiff could lift a gallon of milk with her right hand, she reported she could not do so with her left hand and she could not use her hands for repetitive movements. She said she could sit in one position for about thirty minutes and needed to get up and move. Plaintiff thought she could stand in one position for only fifteen to twenty minutes. Tr. 45. Plaintiff reported problems with anxiety and panic attacks and said she stopped working mostly because of her difficulty being around people. Tr. 48, 51.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ's finding concerning her RFC is not supported by substantial evidence;[1] (2) the ALJ erred in disregarding the April 2010 opinion of her treating physician; (3) the ALJ erred in not finding her testimony concerning the intensity, persistence, and limiting effects of her impairments credible; and (4) the ALJ erred in failing to consider her possible diagnosis of RSD. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence.

---

[1]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

A.    <u>Substantial Evidence/RFC/Consideration of Plaintiff's Possible RSD</u>

Plaintiff argues that the ALJ erred in not considering that she had been diagnosed as possibly having RSD and concerning the impact of her possible RSD on her ability to work. The Commissioner contends that the ALJ did not err in not finding that Plaintiff's possible RSD was a severe impairment. Additionally, the Commissioner argues that the ALJ properly discussed the effect of Plaintiff's impairments on her ability to work and that the RFC assessment included all of Plaintiff's limitations supported by the record.

The ALJ's determination that Plaintiff had the RFC to perform a range of light work despite her impairments is supported by substantial evidence and correct under controlling law. Plaintiff did not meet her burden[2] of showing that her possible RSD was a severe impairment. The ALJ acknowledged Dr. Jordan's opinion that Plaintiff might have RSD-type pain, but noted that no other medical source mentioned RSD or found any objective signs of this diagnosis. Tr. 24. The ALJ specifically considered the effect of Plaintiff's severe impairment of the residual effects of breast

---

[2]It is the claimant's burden to show that he or she had a severe impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

The abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984).

surgery, which included consideration of left arm and chest pain. Based on this impairment, the ALJ specifically placed limitations on Plaintiff's ability to sit, stand, walk, lift, carry, climb, and to push, pull, and reach overhead with her left upper extremity based on her impairment. Plaintiff fails to show any additional limitations based on her possible RSD that are supported by the record.

B.    Credibility

Plaintiff argues that the ALJ erred in not finding her testimony concerning the intensity, persistence, and limiting effects of her impairments credible. She argues that the ALJ should have credited her testimony including that she experiences severe pain, anxiety, and panic attacks; her pain becomes too severe unless she takes medicine; her medicine makes her dizzy, sleepy, and disoriented; her pain is still six to eight out of ten with medication; her impairments severely limit her activities, including that it takes her fifteen minutes to sweep the kitchen, she cannot vacuum, and her husband does most of the housework and cooking; and she cannot paint or do pottery anymore. She argues that the record reflects that she complained of pain and anxiety throughout the insured period and shows that her impairments were worsening. She also argues that medical records from Dr. Harless support her testimony regarding her impairments. The Commissioner contends the ALJ properly stated the standards for evaluating Plaintiff's credibility and found, based on the medical and non-medical evidence of record, that although Plaintiff's impairments could reasonably be expected to produce the symptoms alleged, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of

pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence and correct under controlling law. In his decision, the ALJ found that Plaintiff was not fully credible based on the medical and non-medical evidence. The ALJ properly based his determination, in part, on the objective medical evidence which failed to substantiate limitations to the degree alleged by Plaintiff. The ALJ specifically found that the medical evidence did not reveal the type of abnormalities one would expect if Plaintiff were disabled, including Dr. Rao's findings in February and August 2008, Dr. Harless's findings of objective abnormalities in February 2009, Dr. Jordan's findings in May 2009, Plaintiff's report in June 2009 that she was doing fair with no complaints other than mild fatigue, Dr. Milling's examination which did not find any significant physical abnormalities in August 2009, and Plaintiff's lack of complaints during a check up in December 2009. Tr. 23-24. The ALJ also considered Plaintiff's level of physical and social activities (see Tr. 25). See Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001)(claimant's daily activities undermined her subjective complaints). Also, the ALJ found that Plaintiff was not fully credible based on inconsistencies in the

10

record as a whole, particularly the relatively infrequent and conservative treatment of her symptoms following her mastectomy (Tr. 25).  See Mickles v. Shalala, 29 F.3d at 930.

      C.      <u>Treating Physician</u>

           Plaintiff argues that the ALJ erred in disregarding the April 2010 opinion of her treating physician, Dr. Harless.  She asserts that the ALJ should have given this opinion significant weight because Dr. Harless' findings do not conflict with medical assessments of her or her level of activities at the time of the opinion.  She argues that by the time of Dr. Harless' April 2010 opinion, she was experiencing worsening pain and anxiety.  Plaintiff also argues that subsequent to the April 2010 assessment, she continued to experience significant pain and anxiety.  Additionally, Plaintiff argues that Dr. Harless' assessments within his April 2010 opinion are not inconsistent.  The Commissioner contends that the ALJ properly adopted part of Dr. Harless' opinions and discounted a part of Dr. Harless's April 2010 opinion because it was inconsistent with other evidence in the record.

          The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ gave significant weight to Dr. Harless' March 2009 opinion that Plaintiff's anxiety only imposed slight work-related limitations. The ALJ adopted some of Dr. Harless' April 2010 opinion as well. In particular, he gave deference to Dr. Harless' opinion that Plaintiff was limited in her ability to climb stairs and ladders by finding that Plaintiff must avoid climbing ropes, ladders, and scaffolds. The ALJ found that this limitation was based on any possible difficulty of Plaintiff using his upper extremities by reason of her mastectomy. Based on Dr. Harless' diagnosis of COPD, the ALJ found that Plaintiff must avoid concentrated exposure to dusts, fumes, gases, and poor ventilation. The ALJ also gave deference to Dr. Harless' treating opinion in limiting the amount Plaintiff could sit, stand, walk, lift, carry, climb, and push, as well and pull and reach overhead with her left upper extremity. Tr. 25.

The ALJ's decision to reject part of Dr. Harless' opinion (that Plaintiff would need several thirty minute breaks during the day and would not be able to work eight hours a day, five days a week) is supported by substantial evidence and correct under controlling law. As noted by the ALJ, this aspect of Dr. Harless' opinion was not consistent with the fact that Plaintiff sought little

treatment for her complaints of left-sided pain, and was inconsistent with her many activities, including walking to the drug store, painting, reading, and doing crossword puzzles. The ALJ specifically discounted Dr. Harless' opinion that Plaintiff could not work for eight hours a day, five days a week (because she would miss several days of work due to her chest wall pain and anxiety) because it was not supported by the medical record, which reflected that Plaintiff sought very little treatment for her chest wall pain and anxiety. The ALJ also discounted this portion of Dr. Harless' opinion based on Plaintiff's physical and social activities which revealed a wide range of interests and anxiety and suggested that her chest wall pain and anxiety were not as limiting as Dr. Harless opined. Additionally, the ALJ specifically noted that Dr. Harless set forth no reason to support his opinion that Plaintiff required thirty minute breaks throughout the workday and because this opinion was not supported by other evidence of record. Tr. 25.

The ALJ did not err in discounting part of Dr. Harless' opinion because it was inconsistent with his treatment notes which showed he provided only conservative treatment and because he did not place any limitations on her activities. See Montgomery v. Chater, No. 95-2851, 1997 WL 76937, at *1 (4th Cir. Feb. 25, 1997)(ALJ's finding that treating physician's opinion was not persuasive upheld, in part, because his opinion was unsupported by contemporaneous treatment records); Branum v. Barnhart, 385 F.3d 1268, 1275-1276 (10th Cir. 2004)(upholding rejection of a treating physician's opinion, in part, because the physician saw Plaintiff infrequently and the only treatment provided was medical prescriptions). Additionally, the ALJ's decision to discount part of Dr. Harless' opinion and to give some weight to the assessment of the State agency medical consultants (that Plaintiff could perform a range of light work) is supported by substantial evidence as these opinions were generally consistent with the other evidence of record (Tr. 25). See 20 C.F.R.

§§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

## **CONCLUSION**

Based on the foregoing, it is recommended that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

May 2, 2012
Columbia, South Carolina